Affirmed and Opinion filed March 30, 2004









Affirmed and Opinion filed March 30, 2004.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00276-CR

____________

 

PHILLIP LATRELL
GREEN,
Appellant

 

V.

 

THE STATE OF TEXAS
, Appellee

 



 

On Appeal from the 183rd
District Court

Harris County, Texas

Trial Court Cause No. 901,570

 



 

O P I N I O N

Appellant, Phillip Latrell Green, was
convicted by a jury of aggravated robbery. 
The jury assessed punishment at confinement in the Texas Department of
Criminal Justice, Institutional Division, for a term of 42 years and a fine of
$10,000.  In his sole issue on appeal,
appellant complains that there was not sufficient corroboration of the
accomplice witness testimony to sustain his conviction.  We affirm.








Kimberly Gee began working as a temporary
employee at the Houston Independent School District Tax Office on Tuesday,
January 22, 2002.  Gee learned of the
position through her mother who was working as a security guard at the tax
office.  Gee worked at the tax office for
only three days.  Due to transportation
problems, Gee=s last day at the tax office was Friday,
January 24, 2002.  Although Gee knew she
would not be returning to work at the tax office, she did not inform anyone at
the office of this fact.  

Gee called appellant because she was upset
over her car problems.  Gee and appellant
had been friends since middle school. 
When Gee told appellant she had been working at the tax office, he asked
her if she handled any money; Gee told appellant she did.  Appellant then said he would call Gee
back.  Appellant called Gee later and
said that he and Ahis partner,@ Lee Grey, had
driven over to the tax office building and looked it over.  Appellant asked Gee how late tax office
employees stayed and asked Gee if she could help with the door codes.  Gee told appellant that some employees stayed
late, and she gave him the access code for the employee entrance.  Gee testified that appellant told her he was
going to rob the tax office and they were going to wear ski masks and carry
guns.  Appellant also told Gee he was not
going to hurt anyone.  








On January 29, 2002, Merella Richardson
and A.C. Miller were working in the tax office. 
Richardson was at the copy machine when she heard a door open and
close.  Richardson continued to make
copies when a black male, whose head and face were covered, ran towards
her.  The man put a finger over his
mouth, indicating for her to remain quiet. 
He did not say anything to her, but motioned for her to move away from
the copy machine and put a gun in her side. 
Miller was seated at her desk, facing the door when she heard a
voice.  When Miller looked up, she saw a
black male standing at the door with Richardson.  The man told Richardson and Miller that this
was a robbery and asked where the safe was. 
Miller told him the safe was in the back.  Miller, Richardson, and the man walked to the
room where the safe was located.  Miller
had the code for the safe and opened it. 
The man told them to lie face down on the floor with their heads away
from the door for five minutes. 
Richardson and Miller saw three other intruders who were also wearing
dark clothing and whose heads and faces were covered.  When they no longer heard any noise,
Richardson and Miller got up.  It was
determined that the robbers had taken $36,822.57 in cash.  

Appellant called Gee and told her that Ait=s done.  We finished.@  Appellant called back and said he wanted to
meet somewhere.  Appellant picked up Gee,
who was staying at her mother=s house, and drove
her to her apartment.  Appellant gave Gee
$4,500, which she used to purchase two cars and clothes for herself and her
children.  Gee gave one of the cars to
the children=s father, Tommy Scott.  Before the robbery, Gee and appellant had not
come to an agreement on how to split the money, but she expected to receive
part of the stolen money.  At that time,
Gee and Scott were not married, but they were subsequently married.

Detective Reese and Sergeant Mar of the
Houston Police Department received a Crime Stoppers tip that Gee and Tommy
Scott were involved in the robbery at the tax office.  Once Reese and Mar identified Gee as a
suspect, they discovered that she had some municipal warrants out for her arrest.  On February 4, 2002, Gee was arrested.  Gee told Reese and Mar about her and
appellant=s involvement in the robbery.  

Reese and Mar wanted to confirm some
things Gee had told them about the robbery. 
Therefore, Reese and Mar asked Gee to call appellant; they planned to
tape record the conversation.  Gee agreed
to telephone appellant because Reese and Mar allegedly told her that Aif they don=t have anything to
go on saying that [appellant] did it or anything like that, that [she] was
going to get in trouble.@








Gee asked her mother to place a three-way
telephone call to appellant.  Gee
explained that if appellant saw the number on his telephone=s caller
identification, i.e., that she was calling from the police station, he
would not answer the phone or he would say he did not have anything to do with
the robbery.  When appellant answered the
phone, Gee told him that she was scared and that her mother had said that
police had been questioning a lot of people. 
When Gee asked appellant if anyone had gotten hurt, he said, ANo.@  Gee then told appellant that her mother said
someone had gotten hurt.  Appellant
replied, AKim, they gonna do that.  That=s normal.  They gonna do that s--t cause they know it=s an inside deal.@  Appellant continued and stated that he Atried to prepare
[her] for it.@ 
Appellant did not want to talk about it because Gee could be under
surveillance and the phones could be tapped. 
Gee told appellant the newspaper said over $30,000 was stolen.  Appellant replied, AHell, no.@  Gee asked appellant how much was stolen.  Appellant responded, AWhat I told you.@  When Gee said she was scared, appellant told
Gee that his Apartner@ had said she was
going to get scared.  After that
conversation ended, Gee attempted to call appellant two more times, but he
never answered his phone.  Reese and Mar
confirmed that Gee had purchased two vehicles. 


Gee pleaded guilty to aggravated robbery,
but received no promises about her punishment in that case and did not know
what kind of sentence she was likely to receive.  She did not agree to testify against
appellant because she thought it would help her case; instead, she testified
because she Awas not going to get in trouble by
[herself].@ 
Gee did not know that by giving appellant the door access code that she
was committing aggravated robbery, but at trial, she stated that she understood
that she was a co-defendant or co-conspirator.

AA conviction
cannot be had upon the testimony of an accomplice unless corroborated by other
evidence tending to connect the defendant with the offense committed; and the
corroboration is not sufficient if it merely shows the commission of the
offense.@  Tex.
Code Crim. Proc. Ann. art. 38.14 (Vernon 1979).  The accomplice witness rule is a legislative
creation not required by common law or federal constitutional law.  Vasquez v. State, 56 S.W.3d 46, 48
(Tex. Crim. App. 2001).  The rule
reflects a legislative determination that accomplice testimony should be viewed
with a measure of caution.  Blake v.
State, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998).  








It is not necessary for the non-accomplice
evidence to establish the defendant=s guilt beyond a
reasonable doubt.  Trevino v. State,
991 S.W.2d 849, 851 (Tex. Crim. App. 1999). 
Nor must the non-accomplice evidence connect the defendant to every
element of the crime.  Vasquez, 56
S.W.3d at 48.  Instead, there must be
some non-accomplice evidence which tends to connect the accused to the
commission of the offense.  Cathey v.
State, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999).  AApparently
insignificant incriminating circumstances may sometimes afford satisfactory
evidence of corroboration.@  Munoz v. State, 853 S.W.2d 558, 559
(Tex. Crim. App. 1993).  When conducting
a sufficiency review under the accomplice-witness rule, we must eliminate the
accomplice testimony from consideration and then examine the remaining portions
of the record to determine whether there is any evidence that tends to connect
the accused with the commission of the crime. 
Solomon v. State, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001).  

An accomplice witness may participate with
a defendant before, during, or after the commission of a crime.  McFarland v. State, 928 S.W.2d 482,
514 (Tex. Crim. App. 1996).  An
individual is an accomplice if she could be prosecuted for the same offense as
the defendant.  Blake, 971 S.W.2d
at 454.  Gee pleaded guilty to aggravated
robbery of the tax office and the trial court, accordingly, instructed the jury
that Gee was an accomplice.  

Richardson and Miller testified that
neither one of them could identify any of the perpetrators because their heads
and faces were covered.  Richardson
stated that she had never seen appellant and did not know if appellant was in
the tax office the night of the robbery. 
Reese testified that other than what Gee told him and what is in the
tape recorded conversation with appellant, Reese is not aware of any other
evidence tending to connect appellant to the robbery.  Reese and Mar never located any gun used in
the robbery.  No fingerprints belonging
to the perpetrators were recovered from the scene of the robbery. 

Appellant contends the only non-accomplice
evidence consists of appellant=s statements made
during the tape recorded conversation with Gee, in which Gee made no mention of
the robbery.  Appellant argues the tape
indicates at most that he may have known about the robbery.  We disagree. 









The non-accomplice witness evidence showed
that Gee had worked at the tax office and she had the access code to the
doors.  The funds collected during the
day, including cash, were kept in the desk of a tax office employee, Jo Ann
Carroll, until those funds were transferred to the safe for pick up by
Brinks.  Carroll=s desk was jimmied
open during the robbery.  Because Carroll=s desk was located
behind a wall, not visible to the public, only a tax office employee would know
any money was kept in her desk. 
Customers were only allowed in the lobby area and had no access to the
office in the back.  

Gee=s recorded phone
conversation with appellant further revealed that appellant (1) knew no one had
been hurt during the robbery; (2) knew Ait [was] an inside
deal@; (3) Atried to prepare
[Gee] for it@; (3) did not want to talk about it over
the phone because their phones might be tapped; (5) knew the amount stolen; and
(6) had a partner who knew Gee would get scared.  We conclude the non-accomplice evidence tends
to connect appellant with the commission of the robbery at the tax office and
is sufficient to corroborate Gee=s accomplice
testimony.  

Appellant=s issue is
overruled.  Accordingly, the judgment of
the trial court is affirmed.

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

 

Judgment
rendered and Opinion filed March 30, 2004.

Panel
consists of Justices Yates, Anderson, and Hudson.

Do
Not Publish C Tex.
R. App. P. 47.2(b).